## CAREY v. McMILLAN.

(Circuit Court of Appeals, Eighth Circuit. April 23, 1923.)

No. 6224.

1. Courts ⬤⟍264(3)—Federal court has jurisdiction of ancillary suit by its receiver.

A federal court has jurisdiction of an ancillary suit by its receiver, without regard to the citizenship of the parties or the amount involved.

2. Equity ⬤⟍35—Ancillary suit not necessarily within equity jurisdiction.

Though a suit be ancillary, it does not follow that it will be entertained by a court of equity, nor is its form determined by that of the principal suit; it may be equitable or legal, but it must be a proper proceeding adapted to the facts and the nature of the demand.

3. Receivers ⬤⟍165—Receiver cannot by ancillary bill bring in parties against whom he has no cause of action.

Where a corporation took notes from subscribers to its stock, which notes it indorsed and sold, its receiver, who has no right of action against either the makers or owners of the notes, cannot bring them into the court of the receivership by an ancillary bill and require them to there litigate the purely legal issues between them.

4. Equity ⬤⟍51(2)—Multiplicity of suits, to give jurisdiction, must be of suits to which complainant is a necessary party.

Multiplicity of suits, to confer jurisdiction on a court of equity, must be a multiplicity of suits to which complainant will be a necessary party.

5. Receivers ⬤⟍165—Ancillary bill by receiver held not maintainable.

A receiver for a pledgor of notes cannot by ancillary bill bring the pledgee and makers of the notes into the receivership court to have the liability of the makers there determined, on the assumption that the pledgee would not take proper action to enforce such liability.

6. Pledges ⬤⟍25—Filing of claim by pledgee against pledgor in insolvency does not affect rights in the thing pledged.

That a pledgor has become insolvent and the pledgee has filed claim for the full amount of the debt does not affect the rights of the parties as to the collateral pledged.

7. Equity ⬤⟍51(3)—Court of equity held without jurisdiction of suit on promissory notes.

A receiver for a corporation which is hopelessly insolvent cannot by an ancillary bill confer jurisdiction in equity on the receivership court to determine the liability of the makers on notes given to the corporation in payment for its stock, on the ground of avoiding a multiplicity of suits, where there is no question of contribution or accounting, but the claim against each maker is an independent and purely legal demand for the amount due on his note; nor is such jurisdiction conferred by an allegation that in each case the defense will be that the note was obtained by fraud, to sustain which will necessarily require different testimony in each case.

8. Trial ⬤⟍11(2)—Fraud is legal defense to action on note.

Fraud, alleged simply as a defense to an action on a promissory note, is a legal defense, and the issue is triable as other legal issues.

Appeal from the District Court of the United States for the Northern District of Iowa; James D. Elliott, Judge.

Suit in equity by H. G. McMillan, receiver for the Midland Packing Company, against Harry Anderson and others. From an order deny-

⬤⟍For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ing a motion to dismiss the bill, defendant T. P. Carey appeals. Reversed.

For opinion below, see McMillan v. Anderson, 282 Fed. 675.

Robert Healy, of Ft. Dodge, Iowa (V. P. McManus, of Manson, Iowa, C. H. Wegerslev, of Alta, Iowa, Whitney & Whitney, of Harlan, Iowa, S. D. Riniker, of Rock Rapids, Iowa, B. H. Mallory, of Hampton, Iowa, Kindig, McGill, Stewart & Hatfield, of Sioux City, Iowa, Lovrien & Lovrien, of Humboldt, Iowa, and Hanson & Schaupp and Healy & Breen, all of Ft. Dodge, Iowa, on the brief), for appellant.

E. E. Wagner and C. M. Stilwill, both of Sioux City, Iowa, for appellee.

Robert J. Bannister, of Des Moines, Iowa, amicus curiæ.

Before STONE, Circuit Judge, and BOOTH and JOHNSON, District Judges.

BOOTH, District Judge. This is an appeal from an order denying a motion to dismiss a bill in equity filed by the receiver of the Midland Packing Company, and alleged by him to be ancillary to the suit in which he was appointed receiver, pending in the same court. The defendants are divided in the bill into two classes: Stockholder defendants, 240 in number; and creditor defendants, consisting of banks and others, 9 in number. The bill is voluminous, but its allegations may be summarized as follows:

The Midland Packing Company is an Iowa corporation, organized in March, 1918, to carry on a general meat packing business. Its original authorized capital stock was $3,500,000, which by amendment was increased to $8,000,000. About $3,000,000 was received by the company for stock sold, and about $5,000,000 subscribed by the stockholder defendants and others, upon which part payments have been made. The company built a packing plant at Sioux City, Iowa, the contract price being about $3,165,000. Each of the stockholder defendants entered into a written contract of subscription, making a part payment, and giving a promissory note for the balance of the stock subscribed, payable on or before a fixed date. It was provided in the subscription contract that no stock was to be issued until the amount of the subscription note given therefor was paid in full. The amount unpaid on the notes of the defendant stockholders is $1,279,404, of which $247,376 is on notes held by the receiver, and the balance by the creditor defendants. The plaintiff was appointed receiver of the company on the 10th of June, 1920, and has undertaken the collection of the assets of the corporation. Claims have been filed against the corporation amounting to $3,400,270, of which thus far $2,173,477 have been approved. The company is wholly insolvent. An appraisal of its packing plant, in May, 1921, showed the value, based on the cost of labor and material, at prices prevailing during the period of construction, of $2,522,931, but if sold to-day it would bring less than 50 per cent. of that amount. The outstanding notes of the subscribers to stock amount to $3,062,650, but owing to the impaired financial ability of the makers are worth to-day less than 50 per cent. of that amount.

About 40 actions at law have been commenced by the creditor de-

fendants upon notes held by them, in which actions the defendants have set up that they were induced to make and deliver the notes by the fraud and deceit of the former officers and agents of the packing company. The defenses in each of said actions are substantially the same. Many other actions will be brought upon the notes by the creditor defendants, unless restrained by order of court. None of the stockholder defendants rescinded their contracts prior to the appointment of the receiver, and many of the claims which have been filed and proved against the company accrued after the stockholder defendants subscribed for stock, and on the faith of said stock subscriptions. The creditor defendants are of two classes: Those who own the notes, having purchased them from the packing company; and those who hold notes, as collateral security to loans made to the packing company. The indorsement of the packing company is upon all of the notes held by the creditor defendants, and they have filed their claims against the company, and such claims are included in the amount above given. Extensions have been made by the receiver upon some of the notes held by him, and by the creditor defendants upon some of the notes held by them. Many of the notes involved in the present controversy were due prior to the filing of the present bill, on the 23d of February, 1922; but some of them were not then due.

In addition to the foregoing, the bill alleges that the defenses to the notes in the actions already brought, as well as those to be brought in the future, are the same, and the issues between plaintiff and the creditor defendants, on the one hand, and the stockholder defendants, on the other, will be substantially identical; that the present suit is brought to avoid a multiplicity of actions, and that there will be greater convenience to the plaintiff and the creditor defendants, and no greater inconvenience to the stockholder defendants, in the maintaining of this present suit than in bringing and maintaining the numerous actions at law necessary; and that the expense of maintaining the present suit would be much less than in bringing and maintaining the numerous actions at law.

The prayer for relief is that the amount due and owing from each of the stockholder defendants be ascertained and established for the several amounts shown in a schedule attached to the bill, being the full unpaid amounts on the notes, and that judgment be rendered against each of the stockholder defendants for the amount so found against him, and that the assets be marshaled and equitably distributed so as to equalize the loss among the stockholders. It is further prayed that an injunction issue against the creditor defendants, to restrain them from bringing any actions upon the notes held by them, and, further, that they be required to bring into court and surrender to the receiver such notes, so that they may be surrendered to the stockholder defendants, upon payment.

The motion to dismiss in the court below was made on numerous grounds, but so far as relied upon in this court, may be reduced to the following: (1) That the court had no jurisdiction as a federal court to entertain the bill. (2) That the court had no jurisdiction as a court of equity to entertain the bill, since no ground for equitable relief was

disclosed. (3) That, if any ground for equitable relief is stated, there is a misjoinder of causes of action and of parties defendant.

[1] 1. The bill alleges that the suit is ancillary to the suit in which the receiver was appointed—brought to collect the assets of the insolvent company. It was stated by the court below in its decision that the court had possession of the assets of the packing company for the purpose of winding up its affairs as an insolvent corporation. We shall assume, as counsel on both sides seem to have done, that such is the fact, although we do not find it clearly appearing in the record. It is well settled that an ancillary suit may be maintained in the same federal court which appointed the receiver, without regard to the citizenship of the parties or the amount involved. White v. Ewing, 159 U. S. 36, 15 Sup. Ct. 1018, 40 L. Ed. 67, is perhaps the leading case; but there is a multitude of decisions to that effect.

[2] 2. But, though the suit be ancillary, yet it does not follow that it will be entertained by a court of equity, nor is its form determined by that of the principal case. An ancillary suit may be equitable, as affecting or in aid of an equitable suit. Pope v. Railway, 173 U. S. 573, 19 Sup. Ct. 500, 43 L. Ed. 814; Blair v. Chicago, 201 U. S. 400, 26 Sup. Ct. 427, 50 L. Ed. 801; Hatcher v. Hendrie, etc., Co., 133 Fed. 267, 68 C. C. A. 19; St. Louis, etc., Ry. v. McElvain (D. C.) 253 Fed. 123. Or it may be equitable, as in aid of or affecting a legal action. Dewey v. West Fairmount Co., 123 U. S. 329, 8 Sup. Ct. 148, 31 L. Ed. 179. Or it may be legal, as in aid of or affecting a legal action. Reilly v. Golding, 10 Wall. 56, 19 L. Ed. 858; Lamb v. Ewing, 54 Fed. 269, 4 C. C. A. 320. Or it may be legal, as in aid of or affecting an equitable suit. Kirkland v. Knox, 230 Fed. 806, 145 C. C. A. 116; Hume v. City of N. Y., 255 Fed. 488, 166 C. C. A. 564. The form of the ancillary proceeding is to be adapted to the facts; "but it must be a proper proceeding, adapted to the nature of the demand." N. Y. Guaranty & Indemnity Co. v. Memphis Co., 107 U. S. 205, 212, 2 Sup. Ct. 279, 27 L. Ed. 484; Krippendorf v. Hyde, 110 U. S. 276, 287, 4 Sup. Ct. 27, 28 L. Ed. 145.

Before applying these principles to the present case, let us analyze the bill a little more closely. The bill divides the defendants into two classes, creditor defendants and stockholder defendants; but each of these may be properly subdivided—the creditor defendants into (A) those who own and hold notes of the stockholder defendants; (B) those who hold as pledgee such notes. The stockholder defendants may properly be subdivided into (a) those whose notes are held and owned by the creditor defendants class (A), to which class appellant belongs; (b) those whose notes are held as collateral by the creditor defendants class (B); (c) those whose notes are held by the receiver.

As to the creditor defendants class (A) and the corresponding stockholders class (a), what is the relation of the receiver? The notes belong to the creditor defendants; they represent no asset of the packing company; they were sold to and paid for by the creditor defendants.

[3, 4] It is alleged in the bill that these creditor defendants will bring suits against the stockholder defendants on these notes unless

restrained; that the receiver is interested in the suits by reason of the indorsement of the packing company on the notes; that there is a multiplicity of such suits; that by reason of such multiplicity the receiver has joined in this suit both creditor defendants and the stockholder defendants corresponding to such notes. The receiver asks that the purely legal causes of action of these creditor defendants against the stockholder defendants be brought into the forum of the receivership and tried, because he is interested in seeing that the defenses of the makers of the notes do not prevail. The demand is a bold one, but the theory is too attenuated. We cannot assume that the creditor defendants will not prosecute vigorously and ably their causes of action on the notes they own. Multiplicity of suits, to confer jurisdiction, must be a multiplicity of suits to which the plaintiff will be a necessary party. Equit. Life Assur. Co. v. Brown, 213 U. S. 25, 51, 29 Sup. Ct. 404, 53 L. Ed. 682; Mallory v. Thalheim (C. C. A.) 277 Fed. 196, 206; Scruggs v. Am. Ins. Co., 176 Fed. 224, 100 C. C. A. 142, 36 L. R. A. (N. S.) 92; Thomas v. Council Bluffs Co., 92 Fed. 422, 34 C. C. A. 428. There is no necessity for the creditor defendants to make the receiver a party to their actions on the notes, because their claims against the packing company by reason of its indorsement have been filed and allowed.

[5] What has been said in reference to class (A) of the defendant creditors and class (a) of the defendant stockholders largely applies also to class (B) of defendant creditors and class (b) defendant stockholders. But here, of course; the receiver has an interest in any surplus that may exist in the collateral over the amount due the pledgee. The right of action on the notes, however, when it arises, is in the pledgee and not in the receiver. It is alleged by the receiver that he cannot compel action to be brought on these notes, but he has also alleged that these creditors unless restrained will bring such actions. Here again we cannot assume that the pledgee holders will not seasonably and ably prosecute such actions and pay over any surplus to the receiver. Such is the duty of the pledgee, and we cannot assume it will be neglected. Jones on Collateral Securities, §§ 665, 692; Daniel on Negotiable Instruments (6th Ed.) §§ 826, 833.

[6] That the pledgor has become insolvent and pledgee has filed its claim for the full amount of the debt does not affect the rights of the parties as to the collateral; if the dividend received by the pledgee reduces the debt so that the collateral security will more than pay it, the security should be redeemed for the benefit of general creditors. Merrill v. Bank, 173 U. S. 131, 19 Sup. Ct. 360, 43 L. Ed. 640; Internat. Banking Co. v. Lynch (C. C. A.) 269 Fed. 242; Risk v. Kansas Trust Co. (C. C.) 58 Fed. 45. It is to be noted that there is no issue between the receiver and the pledgees as to the amount owing the latter, nor as to the validity of the pledge; the only questions raised by the receiver are as to the forum in which the collateral shall be sued upon and who shall bring the suit.

Against the foregoing classes of defendants, whether defendant creditors or defendant stockholders, the receiver has no present cause of action. So that the question whether the ancillary suit should take

the form of a suit in equity or an action at law does not properly arise. It is true the bill speaks of marshaling of assets and contribution amongst stockholders as grounds for bringing in these defendants; but marshaling of assets, if one becomes necessary, will take place not in the present suit, but in the principal suit in which the receiver was appointed. Contribution between the stockholders will not be necessary, because under the allegations of the bill the company is hopelessly insolvent, and the full amount due from each stockholder will be required as a fund for creditors.

[7] There remains to be considered class (c) of the defendant stockholders, those whose notes are held by the receiver. Against each of these the receiver doubtless has a cause of action, as stated in his bill, and these causes of action may be prosecuted by the receiver in ancillary suits in the federal court of his appointment, without regard to citizenship or amount involved. Is the present bill in equity the proper form of such suit? As stated above, it must be a proper proceeding, adapted to the nature of the demand. The demand is against each stockholder, for a stated amount, upon a promissory note. A personal judgment is sought against each stockholder. No accounting is necessary. No contribution is necessary. The demand against each stockholder is a purely legal demand, and it is for the full amount unpaid upon his note.

If there were but a single stockholder against whom recovery was sought, the form of the procedure clearly should be an action at law. We say this in view of the Seventh Amendment to the Constitution, and section 723, R. S. (section 267, Judicial Code [Comp. St. § 1244]). It was said by the Supreme Court in Wehrman v. Conklin, 155 U. S. 314, at page 323, 15 Sup. Ct. 129, at page 132 (39 L. Ed. 167):

"These provisions are obligatory at all times and under all circumstances, and are applicable to every form of action. * * *"

But the court further said:

"It was not intended to restrict the ancient jurisdiction of courts of equity, or to prohibit their exercise of a concurrent jurisdiction with courts of law in cases where such concurrent jurisdiction had been previously upheld."

In New York Co. v. Memphis Co., 107 U. S. 205, 214, 2 Sup. Ct. 279, 286 (27 L. Ed. 484), it was said:

"This enactment [R. S. § 723] certainly means something; and if only declaratory of what was always the law, it must, at least, have been intended to emphasize the rule, and to impress it upon the attention of the courts." See, also First State Bank v. Spencer, 219 Fed. 503, 135 C. C. A. 253.

In numerous decisions involving ancillary suits the courts have adverted to and been governed by these provisions. New York Co. v. Memphis Co., 107 U. S. 205, 2 Sup. Ct. 279, 27 L. Ed. 484; City of Eau Claire v. Payson, 109 Fed. 676, 48 C. C. A. 608; Robinson v. Mutual Reserve Co. (C. C.) 175 Fed. 629; Whelan v. Enterprise Co. (C. C.) 164 Fed. 95. There are cases to the contrary; perhaps the leading one is Peck v. Elliott, 79 Fed. 10, 24 C. C. A. 425, 38 L. R. A. 616, which cites as authority White v. Ewing. But in White v. Ewing

the demand involved was not a purely legal demand but involved the foreclosure of a vendor's liens.

In the present case there is the added element of a multiplicity of actions, and where this element is present there is no unanimity of decisions as to the proper form of suit. In Hale v. Allinson, 188 U. S. 56, at page 77, 23 Sup. Ct. 244, at page 252 (47 L. Ed. 380), the court said (speaking of jurisdiction in equity):

" * * * It is easy to say it rests upon the prevention of a multiplicity of suits but to say whether a particular case comes within the principle is sometimes a much more difficult task. Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon its own merits, and upon a survey of the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be contested, and the result which would follow if jurisdiction should be assumed or denied. * * * "

In that case a demurrer was sustained to a bill in equity similar in many respects to the present bill. Hale v. Allinson has been followed in many cases, among them Watson v. Huntington, 215 Fed. 472, 131 C. C. A. 520; Bellamy v. St. L. Ry. Co., 220 Fed. 876, 136 C. C. A. 442; Clinton Co. v. Cochran, 247 Fed. 449, 159 C. C. A. 503; Bartson v. Mingo (C. C. A.) 284 Fed. 52; Fidelity Trust Co. v. Archer, 179 Fed. 32, 103 C. C. A. 16. See, also, Kelley v. Gill, 245 U. S. 116, 38 Sup. Ct. 38, 62 L. Ed. 185. Furthermore, where the full amount unpaid is sought, as in the present case, the suit must be at law. Kennedy v. Gibson, 8 Wall. 498, 505, 19 L. Ed. 476; Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168; U. S. v. Knox, 102 U. S. 422, 26 L. Ed. 216; Hale v. Allinson, 188 U. S. 56, 78, 23 Sup. Ct. 244, 47 L. Ed. 380.

The case of Wyman v. Bowman, 127 Fed. 257, 62 C. C. A. 189, decided by this court, is not in conflict. Judge Sanborn, in the opinion in the Wyman Case clearly pointed out the distinctions between that case and Hale v. Allinson. We think the distinctions between the Wyman Case and the one at bar are also clear. In the Wyman Case relief of an equitable nature was sought, which, as stated by the court, was indispensable to the plaintiff's recovery. Furthermore, the suit, though against nine defendants, was based upon their signatures to the same agreement of subscription. And still further, the court found from the facts disclosed by the evidence that there was a community of interest of the defendants in every material question of law and fact involved in the controversies presented by the suit. In the present case no equitable relief is necessary, and though it is alleged in the bill that there is a community of interest of the defendants in the defense of fraud and false representations, yet it is perfectly apparent, from the nature of the defense, that the transactions between the company and the individual stockholder defendants were separate transactions; and even though the alleged false representations were the same in each case, and to be proven by the same witnesses, which cannot be foreseen, yet the questions whether a particular defendant believed the representations and relied upon them in the transaction are questions peculiarly personal to each defendant, in which there can by no possibility be a community of interest between the several defendants. Whether the stockholder defendants are estopped to set up the

defense of fraud and false representations as alleged by plaintiff will doubtless depend upon circumstances which may and probably will vary widely with the different defendants. To sum up: The demand made against each defendant being purely legal, each demand being independent of every other, the amount demanded against each being the full amount unpaid on the stock, no accounting being necessary, no contribution being necessary, community of interest of the defendants in all the important questions of law and fact involved not being shown, and being highly improbable, we are of opinion that the 'bare multiplicity of suits is not sufficient to give the court jurisdiction to entertain the present bill in equity.

The plain and adequate remedy at law open to the receiver is to bring ancillary actions at law in the federal court against the several defendants whose notes he holds. When the pleadings are made up, if it is found feasible and desirable to consolidate the suits into one or several groups for trial, the power of the court is ample for that purpose. The convenience of the parties can thus be served, the cost of the litigation need not be appreciably greater, and the right of trial by jury will be preserved.

[8] It is contended by appellee that, if actions at law were brought by the receiver against the stockholders whose notes he holds, and they should set up fraud as a defense, this issue would have to be tried on the equity side of the court, under section 274b, Judicial Code, citing U. P. R. Co. v. Syas, 246 Fed. 561, 158 C. C. A. 531; Fay v. Hill, 249 Fed. 415, 161 C. C. A. 389. The contention cannot be sustained. Fraud may be either a legal or an equitable defense. If asserted simply to defeat plaintiff's cause of action, the issue is tried in the same way as other legal issues. 8 Corpus Juris, p. 1065; Cable v. Insurance Co., 191 U. S. 288, 24 Sup. Ct. 74, 48 L. Ed. 188; N. W. Life Ins. Co. v. Riggs, 203 U. S. 243, 27 Sup. Ct. 126, 51 L. Ed. 168, 7 Ann. Cas. 1104; Griesa v. Insurance Co., 169 Fed. 509, 94 C. C. A. 635. If asserted to obtain affirmative relief, then the issue is to be tried on the equity side of the court. U. P. R. Co. v. Syas, supra; Fay v. Hill, supra.

As what we have said disposes of the case, it is not necessary to discuss separately the third ground of the motion to dismiss.

The order appealed from is reversed, with instructions to dismiss the bill without prejudice to the right of the receiver to bring actions at law against the defendants whose notes he holds.